**UNITED STATES, Appellee,**

v.

**Richard W. CATT, Machinist's Mate Fireman, U. S. Navy, Appellant.**

No. 28,747.

U. S. Court of Military Appeals.

June 6, 1975.

---

*Lieutenant Walter A. Smith, Jr.*, JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief was *George K. Walker, Esquire.*

*Lieutenant Thomas L. Earp*, JAGC, USNR, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel P. N. Kress*, USMC.

## OPINION OF THE COURT

FERGUSON, Senior Judge:

The appellant was brought before a general court-martial convened at the First Naval District, Boston, Massachusetts, on charges alleging a conspiracy to damage the number 2 main propulsion motor of the U.S.S. *Aeolus* and the actual willful damage of that same engine in violation of Articles 81 and 108, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 908. In a trial before a military judge, the appellant was found guilty of the conspiracy and, by exceptions and substitutions, of attempting to damage the number 2 main propulsion motor in violation of Article 80, UCMJ, 10 U.S.C. § 880. Although sentenced by the judge to a bad-conduct discharge, confinement at hard labor for 4 years, total forfeitures, and reduction to pay grade E–1, the convening authority, in otherwise approving the sentence as adjudged, suspended all confinement in excess of 1 year. After likewise affirming the findings, the Court of Military Review affirmed only so much of the sentence as provided for the bad-conduct discharge, confinement at hard labor for 1 year, total forfeitures for the actual

period of confinement, and the reduction. This Court granted review to consider whether the Court of Military Review was correct in concluding that the military judge's improper disqualification of appellant's detailed trial defense counsel was harmless error. We reverse.

The facts giving rise to this appeal are not in dispute. On May 5, 1972, after an investigation revealed the appellant's possible involvement with two others in damaging the number 2 main propulsion motor of the ship, Lieutenant Bruce Q. Morin, JAGC, USNR, of the Navy Law Center, Boston, Massachusetts, was detailed to represent him. This representation continued throughout the initial pretrial proceedings, including the initial Article 32 investigation which consisted of 12 sessions held intermittently between mid-July and early October 1972.

In mid-November 1972, however, while the pretrial advice to the convening authority was still in the drafting stage, Lieutenant Morin was transferred from Boston, the situs of the whole of these proceedings, to the Naval Justice School, Newport, Rhode Island. Apparently intending to continue serving as the appointed counsel for Fireman Catt following his transfer, Lieutenant Morin arranged with another certified attorney at the Boston law center, Lieutenant Gerry A. Dunlap, JAGC, USNR, to act in his absence as a liaison between himself and the appellant. Pursuant to this arrangement, Lieutenant Dunlap thereafter began consulting Fireman Catt on various matters relating to the disposition of the pending charges.

Prior to assuming this role as a liaison, Lieutenant Dunlap had provided assistance to Lieutenant Michael Moyers, JAGC, USNR, another attorney at the Boston law center, who was independently assigned by the staff judge advocate to prepare a draft of the pretrial advice to the convening authority in the cases of the appellant and his two alleged co-actors. Lieutenant Dunlap's assistance consisted of summarizing the testimony from the Article 32 investigation provided by several engineering witnesses which related only to the nature and extent of the damage to the ship's number 2 motor. All other portions of the draft Article 34 advice, including the summarization of all testimony relating to the appellant's culpability for the damage as well as the analysis and recommendation portions thereof, were prepared exclusively by Lieutenant Moyers.

When the charges against the appellant and the two alleged co-conspirators were ultimately referred to trial on November 21, 1972, the two co-conspirators and their respective counsel began negotiations for pretrial agreements. In view of these developments, it became apparent to all parties directly concerned with the appellant's case that a full-time counsel, one located in Boston, was needed to protect the appellant's interests adequately and effectively during this critical period. In subsequent conversations among the appellant and Lieutenant Dunlap in Boston and Lieutenant Morin in Newport, it was decided that the appellant should immediately request that Lieutenant Dunlap be assigned to represent him as his appointed counsel and that Lieutenant Morin be made available as individual military counsel.

By a letter dated November 29, 1972,[1] the appellant formally requested the convening authority to appoint Lieutenant Dunlap as his detailed defense counsel and that Lieutenant Morin be made available to act as individual military counsel. In making these requests, the appellant specifically

---

1. The letter, in pertinent part, read as follows: Because Lieutenant MORIN has been transferred from your Command, it is requested that Lieutenant Gerry A. DUNLAP, JAGC, USNR, be assigned to represent me at my forthcoming general court-martial. I understand from speaking with Lieutenant DUNLAP that he has participated in the preparation of the Article 34 advice to you by drafting summaries of the testimony of several of the witnesses who testified at the Article 32 investigation, in which I was a party. I have no objection to his prior participation and would like to have Lieutenant DUNLAP as my detailed defense counsel.

stated his awareness of Lieutenant Dunlap's participation in the preparation of the pretrial advice by summarizing some of the testimony from the Article 32 investigation; nevertheless, he indicated he had no objection to that prior participation and affirmatively stated his desire to have Lieutenant Dunlap as his detailed defense counsel.

On November 30, 1972, the convening authority made a written response to the appellant's counsel request by naming Lieutenant Dunlap as his sole defense counsel. By that same letter, the convening authority also advised the appellant that action on his additional request for the assignment of Lieutenant Morin as individual military counsel would be taken at such time as the Commanding Officer, Naval Justice School, Newport, Rhode Island, determined that officer's availability.

Appellant's trial was thereafter tentatively scheduled for December 15, 1972, partly because Lieutenant Dunlap needed at least 2 weeks to prepare for trial and also because Lieutenant Morin would not be made available, if at all, any earlier. By December 14, Lieutenant Dunlap was prepared to proceed and forwarded a written request to the convening authority urging that appellant be brought to trial. On the following day, Lieutenant Morin was finally made available as individual military counsel. But when the Government informed both counsel on that same date that the conspiracy charge would be amended, the defense elected a second Article 32 investigation on the amended charge.

The new investigation was held on December 22 with the appellant represented by both Lieutenant Dunlap and Lieutenant Morin. The investigation lasted only one session; charges were again preferred the same day and referred to trial on December 27. Throughout this period, Lieutenant Dunlap counselled with the appellant on numerous occasions and helped Lieutenant Morin prepare legal arguments for trial.

When the trial convened on January 2, 1973, the appellant was represented by both counsel, now named in a modification to the convening order as detailed defense counsel and individual military counsel. During the preliminary proceedings, each defense counsel stated for the record that he had not previously acted as a member of the prosecution. Upon inquiry by the trial judge, the accused expressed complete satisfaction with both Lieutenant Dunlap and Lieutenant Morin as his counsel.

During the subsequent litigation of a defense motion for dismissal of the charges for lack of a speedy trial, Lieutenant Moyers was called as a prosecution witness to testify concerning his preparation of the pretrial advice. Due to the mention by Lieutenant Moyers of Lieutenant Dunlap's role in summarizing the engineering testimony from the Article 32 investigation, the trial counsel later introduced the appellant's letter in which he expressly waived Lieutenant Dunlap's prior participation when specifically requesting him as his appointed defense counsel. In stating that the defense had no objection to the introduction of the letter, Lieutenant Morin explained that the defense had no intention of raising any question concerning Lieutenant Dunlap's eligibility. After admitting the letter into evidence, the military judge also received personal assurances from the appellant that he was fully aware of Lieutenant Dunlap's prior activities in the case and that he still desired him as his appointed counsel.

When the trial reconvened following a recess taken immediately thereafter, the military judge, after referring to paragraph 6a, Manual for Courts-Martial, United States, 1969 (Rev.),[2] raised sua sponte the question of Lieutenant Dunlap's eligibility to serve as a counsel for the defense because his prior participation may have constituted action for the prosecution. After calling upon counsel for both the Government and the defense to present their views

2. Paragraph 6a provides, in pertinent part:
   No person who has acted for the prosecution

may act later in the same case for the defense.

on the matter,[3] the military judge ruled that Lieutenant Dunlap was disqualified from serving as appointed defense counsel. Although indicating that he might still permit Lieutenant Dunlap to serve as an additional assistant defense counsel if Fireman Catt so desired, the military judge adjourned the court to allow the appointment of another counsel.

When trial reconvened about 2 hours later, the trial counsel announced that the convening order had been further amended to detail Captain Bernard A. Jackvony, USMC, as the appointed defense counsel instead of Lieutenant Dunlap, who was relieved. This newly appointed counsel as well as Lieutenant Morin and Lieutenant Dunlap were all present at these proceedings. Captain Jackvony, explaining that he had only recently returned from an overseas assignment and that this was his first day on duty at this command, requested a 2-week delay in order to prepare for trial. Further discussion followed in which Lieutenant Morin, the individual military counsel, stated his availability some 2 weeks hence was uncertain; he also reiterated that the defense was most anxious to have the continued assistance of Lieutenant Dunlap, particularly in view of the considerable time Lieutenant Dunlap had spent in preparing the case. Apparently assuming that something would be worked out concerning the availability of counsel over the next several days, the military judge adjourned the court until sometime during the week of January 15.

The court-martial reconvened on January 15, 1973, with all three of appellant's counsel present and ready to proceed. Immediately, however, the military judge took up the propriety of Lieutenant Dunlap's continued representation. While acknowledging that he had previously stated that Lieutenant Dunlap might still be able to serve as a member of the defense team, the military judge indicated that he had further researched the point during the interim period, and was now, on his own initiative, relieving Lieutenant Dunlap from all participation in the case. Upon subsequent order to remove himself from counsel's table, Lieutenant Dunlap thereafter withdrew from the courtroom and ceased any further participation in the appellant's case.

Before the Court of Military Review, the appellant asserted that the military judge committed prejudicial error by ruling that Lieutenant Dunlap was disqualified from acting as his counsel. Although agreeing fully with the defense "that the military judge clearly erred when he removed the accused's appointed military counsel . . . from the case," [4] the Court of Military Review, noting that the action of the judge "was taken in good faith based on a misunderstanding of the law," [5] concluded that the decisions of this Court required that such error be tested for specific prejudice. After reviewing the entire proceedings with respect to the appellant's representation by counsel, the Court of Military Review denied the appellant's assignment holding that it was "unable to find any possibility of prejudice to the accused by virtue of the military judge's erroneous relief of his appointed defense counsel." [6]

The military judge, upon making his ruling that Lieutenant Dunlap was disqualified, alluded to provisions of both the Uniform Code and the Manual pertaining to the qualifications of counsel. In pertinent

---

3. During this discussion, Lieutenant Morin made the military judge aware of an opinion he solicited during the recess which expressed the view that Lieutenant Dunlap might be disqualified. Taken in context, this disclosure by Lieutenant Morin of possible authority adverse to the position of the appellant cannot be viewed as anything more than the requisite ethical candor of a trial attorney, especially where the appellant's desire to retain the assistance of Lieutenant Dunlap was so clearly spread across the record. *See* ABA Code of Professional Responsibility, EC 7–23 and DR 7–106(B)(1). *See also* paragraphs 42*b*, 44*f*(4), 48 *h*, MCM.

4. *United States v. Catt*, N.C.M. 73–1750 (N.C.M.R., April 30, 1974), at 13.

5. *Id.*

6. *Id.* at 14.

part, Article 27(a), UCMJ, 10 U.S.C. § 827(a), provides:

> No person who has acted for the prosecution may act later in the same case for the defense.

Paragraph 61*f*(4), MCM, in further elaborating upon this codal provision, states:

> If it appears that any member of the defense has previously acted in the same case for the prosecution, he will be excused forthwith. If a member of the defense is the accuser or has participated in the case as an investigating officer, military judge, or court member, he will be excused unless the accused expressly requests his services.

■ From an examination of the foregoing provisions, it is abundantly clear that a distinction is drawn between someone who has acted in the same case "for the prosecution" and someone who has participated in the same case, albeit technically for the Government, in a neutral, impartial or advisory capacity. In the former situation, any member of the defense would have to be "excused forthwith" as statutorily ineligible. The reason for this rule is obvious and deeply rooted in the ethics of the legal profession. Once an attorney has established an attorney-client relationship for either the prosecution or the defense, he is bound by his professional duty to avoid divulgence of a client's confidences or secrets to the disadvantage of the latter. ABA Code of Professional Responsibility, EC 4–5 and DR 4–101(B).[7]

■ As illustrated by the language in paragraph 61*f*(4), MCM, however, this prohibition does not automatically obtain in those situations where no attorney-client relationship has been established and where no confidences or secrets have been obtained. Where an accused expressly elects to request the services of such a person as his counsel, there is no legal or ethical bar to prevent that person from acting in a defense capacity.

■ As applied to the facts before us, the question of whether Lieutenant Dunlap was disqualified to serve as a defense counsel turns on whether his summarization of the Article 32 testimony of some engineering witnesses for possible use by the staff judge advocate in the pretrial advice to the convening authority was sufficient to establish an attorney-client relationship between himself and the prosecution which gave him special knowledge about the prosecution's case. Although it is true that the staff judge advocate in his capacity as legal advisor must make a recommendation for or against trial by court-martial, there is nothing in the record to suggest that Lieutenant Dunlap had anything whatever to do with the ultimate recommendation made in this case. In the absence of some indication of bias or prejudice in favor of the Government, moreover, it must be assumed that the staff judge advocate, or someone contributing to his advice, only presents to the convening authority a fair summary of the available evidence.[8] Any such impartial action does nothing to aid either the prosecution or the defense in terms of the building or preparation of their respective cases.[9] Consequently, no attorney-client relationship is established with respect to either. In the same way that the Manual specifically provides that the Manual specifically provides that an Article 32 investigating officer is not disqualified from later serving as a defense counsel at an accused's request, even though he has the statutory duty to make a recommendation for or against trial by court-martial on the basis of the evidence before him, so too would it appear that Lieutenant Dunlap was not prohibited

**7.** *See also United States v. McCluskey*, 6 U.S.C.M.A. 545, 20 C.M.R. 261 (1955); *United States v. Green*, 5 U.S.C.M.A. 610, 18 C.M.R. 234 (1955).

**8.** *United States v. Thomas*, 3 U.S.C.M.A. 798, 14 C.M.R. 216 (1954); *accord, United States v. Mallicote*, 13 U.S.C.M.A. 374, 32 C.M.R. 374 (1962); *United States v. Haimson*, 5 U.S.C.M.A. 208, 17 C.M.R. 208 (1954).

**9.** *See United States v. Willis*, 22 U.S.C.M.A. 112, 46 C.M.R. 112 (1973); *United States v. Mallicote, supra; United States v. Judd*, 11 U.S.C.M.A. 164, 28 C.M.R. 388 (1960).

from serving as the detailed defense counsel when requested by this appellant.[10]

As to this point, the Government properly conceded before this Court that the Court of Military Review was correct in holding that the military judge erred by ruling Lieutenant Dunlap disqualified. The only real dispute on this appeal, therefore, involves the question of whether the Court of Military Review was likewise correct in concluding that such error does not require relief in the absence of specific prejudice. Taking the position that the Court of Military Review properly decided this issue, the Government also argues, in the alternative, that since the defense induced that error at trial, it may not now assert that error on appeal.

■ Taking this latter contention first, we reject outright, as did the Court of Military Review below, the Government's argument that the erroneous removal of Lieutenant Dunlap from the case was defense induced and that it was nothing more than a defense strategem in support of its motion to dismiss the charges for lack of speedy trial.

Situations involving a possible defense waiver at trial of a statutory eligibility requirement and the right to later assert such error for the first time on appeal are not new to this Court. Where the defense, armed with full knowledge of its right to make objection or challenge, deliberately and consciously declines to do so and expressly waives that right, we have consistently declined to support a rule of law which would permit the defense to induce the error and then take advantage of it on appeal. *United States v. Airhart,* 23 U.S.C.M.A. 124, 48 C.M.R. 685 (1974); *United States v. Law,* 10 U.S.C.M.A. 573, 28 C.M.R. 139 (1959); *United States v. Beer,* 6 U.S.C.M.A. 180, 19 C.M.R. 306 (1955).

The Supreme Court has admonished, however, that courts should not lightly indulge the waiver of a right so fundamental as the right to counsel. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). With an understanding of the alternatives a necessary component of any informed waiver, "[t]he appellant's silent acceptance of a condition he apparently was powerless to change can hardly be called an exercise of free will." *United States v. Andrews,* 21 U.S.C.M.A. 165, 168, 44 C.M.R. 219, 222 (1972).

Quite unlike such situations involving the very essence of waiver, this trial record completely dispels any notion of self-induced defense error or strategy. Not only did the defense here initially wholly reject any suggestion that it was seeking to raise any question concerning Lieutenant Dunlap's continued eligibility to serve as a defense counsel, but it steadfastly reiterated throughout the course of this inquiry the appellant's desire to retain his assistance. An examination of the judge's own comments in making his ruling, moreover, unequivocally reflects that he relieved Lieutenant Dunlap on his own initiative based upon the results of independent research. Because this disqualification ruling was made considerably prior to the point in the trial when argument on the speedy trial motion was even entertained, it is likewise patent that the judge did not rely upon any defense reference to that prior ruling, which the appellant was powerless to change.

The only question left for resolution is the legal effect of the judge's erroneous removal of Lieutenant Dunlap. As to this point, we believe that the Court of Military Review misapplied the decisions of this Court in concluding that the complete loss of such assistance was harmless error.[11]

---

10. *See United States v. Gandy,* 9 U.S.C.M.A. 355, 26 C.M.R. 135 (1958); *United States v. Hurt,* 8 U.S.C.M.A. 274, 24 C.M.R. 34 (1957); *United States v. Borner,* 3 U.S.C.M.A. 313, 12 C.M.R. 69 (1953).

11. The complete removal of Lieutenant Dunlap from any participation whatever in this case is quite different from the situation obtaining in *United States v. McFadden,* 19 U.S.C.M.A. 412, 42 C.M.R. 14 (1970), where a non-lawyer assistant trial defense counsel, although removed, was still able to sit at the defense table and fully assist in the defense of the accused.

■ The right of a military accused to be represented by counsel at trial by court-martial is somewhat broader in scope under the Uniform Code of Military Justice than that accorded to civilian defendants under the United States Constitution. Article 38(b), UCMJ, 10 U.S.C. § 838(b), not only accords a military accused the right to the appointment of a qualified counsel, but it also accords him the right to have a military counsel of his own selection, if reasonably available. When an accused elects to be represented by selected military counsel and that counsel . is subsequently made available, Article 38(b) further grants the accused the right to retain his appointed defense counsel as "associate counsel." *United States v. Jordan*, 22 U.S.C.M.A. 164, 166, 46 C.M.R. 164, 166 (1973).

In previously expressing our view as to the importance of an accused's right to the effective assistance of his appointed military defense counsel, we held:[12]

> An accused's right to be represented by defense counsel appointed in his behalf is a fundamental principle of military due process. . . . Once entered into, the relationship between the accused and his appointed military counsel may not be severed or materially altered for administrative convenience.

The establishment of a viable attorney-client relationship is the key determinative factor reiterated throughout the previous decisions of this Court involving a claimed denial of an accused's right to counsel. As a general rule, we have consistently held that the unlawful severance of an existing attorney-client relationship dictates reversal without regard to the amount of prejudice sustained. *United States v. Eason*, 21 U.S.C.M.A. 335, 45 C.M.R. 109 (1972); *United States v. Andrews, supra; United States v. Murray*, 20 U.S.C.M.A. 61, 42 C.M.R. 253 (1970); *United States v. Williams*, 18 U.S.C.M.A. 518, 40 C.M.R. 230 (1969). This does not mean, however, that an attorney-client relationship, once entered into, may not be dissolved for *good cause.* For we have also recognized, without specifically testing for

prejudice in those instances, that the issue may rather turn on the question of whether *good cause* is affirmatively demonstrated in the record for the severance or dissolution of the attorney-client relationship. *United States v. Timberlake*, 22 U.S.C.M.A. 117, 46 C.M.R. 117 (1973); *United States v. Massey*, 14 U.S.C.M.A. 486, 34 C.M.R. 266 (1964). Only in those situations where no attorney-client relationship was established, however, or where, once established, it was terminated by either the appellant himself or his counsel, has this Court looked to the possibility of any specific harm suffered by the appellant as a result of any claimed denial of his right to counsel. *United States v. Johnson*, 23 U.S.C.M.A. 148, 48 C.M.R. 764 (1974)· *United States v. Jordan, supra; United States v. McFadden*, 19 U.S.C.M.A. 412, 42 C.M.R. 14 (1970); *United States v. Tavolilla*, 17 U.S.C.M.A. 395, 38 C.M.R. 193 (1968).

■ The instant record leaves no doubt that a viable attorney-client relationship indeed existed between appellant and Lieutenant Dunlap. That relationship started when Lieutenant Dunlap began to act as a liaison advisor, and it was formalized when Lieutenant Dunlap was appointed as the appellant's sole defense counsel during a critical stage in these proceedings. Lieutenant Dunlap counselled the appellant on numerous occasions and was also present as his detailed defense counsel when the ,second Article 32 investigation was held. In conjunction with Lieutenant Morin, who was subsequently made available as individual military counsel, Lieutenant Dunlap prepared legal arguments for use at the pending trial. Lieutenant Dunlap not only diligently and effectively pursued these efforts on behalf of the appellant from late November 1972 until subsequently removed from any participation in the case whatever on January 15, 1973, but he and the appellant also developed an extremely close working relationship during that period.

Unlike the Court of Military Review, we do not find the good faith of the military

12. *United States v. Murray*, 20 U.S.C.M.A. 61, 62, 42 C.M.R. 253, 254 (1970).

judge in severing the appellant's attorney-client relationship with Lieutenant Dunlap, apparently because of a misunderstanding of the law, to be of any significance. Indeed, in many of our previously decided cases involving the severance of an existing attorney-client relationship, we have expressly assumed good faith on the part of the person or persons so terminating that relationship. *United States v. Eason, supra; United States v. Massey, supra; United States v. Tellier,* 13 U.S.C.M.A. 323, 32 C.M.R. 323 (1962). Were this not so, the entirely different issue of illegal influence upon or interference with the trial proceedings would have been established. *United States v. Tavolilla, supra.*

As previously indicated, the crucial inquiry in this case must be whether *good cause*, as opposed to good faith, is shown by the military judge's erroneous interpretation of the law which resulted in the ultimate severance and frustration of the instant attorney-client relationship. In this respect, the case at bar appears substantially similar to that of *United States v. Andrews, supra*, where an accused's relationship with his attorney was also severed because of a misapplication of the law. In *Andrews*, the accused was represented by an appointed military counsel until the latter's release from active duty. The accused believed that he could retain that same counsel as a civilian after his separation. Andrews' continued retention of that counsel was frustrated, however, by an officer in the Office of the Judge Advocate General who decided that the counsel in question was barred from further representation in the case by 18 U.S.C. § 207, which disqualifies a former government employee, at the termination of his service, from acting as an attorney for anyone other than the Government in connection with a matter in which he had participated as a government officer or employee. On the basis of those facts, this Court found that an attorney-client relationship had indeed existed between the accused and his formerly appointed counsel, and that the counsel's agreement to continue on the case as a civilian after his release from active duty was consistent with a correct construction of the applicable law. In a unanimous opinion, the Court held:[13]

> The unwarranted intervention of [counsel's] . . . superiors deprived Andrews of his statutory right to have the civilian counsel of his choice.

> \*   \*   \*   \*   \*   \*

> The occurrence of such error dictates reversal without regard to the existence or amount of prejudice sustained.

The parallel between the error committed in *Andrews* and the error committed here is obvious. In each instance, a viable attorney-client relationship was wrongfully terminated on the basis of an erroneous interpretation of the law made in good faith. But just as that error did not amount to a showing of good cause for the severance of the attorney-client relationship in *Andrews*, it likewise does not constitute good cause here.

The decision of the United States Navy Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Judge COOK concurs.

Chief Judge FLETCHER did not participate in the decision of this case.

---

13. *United States v. Andrews,* 21 U.S.C.M.A. 165, 168, 44 C.M.R. 219, 222 (1972).