**UNITED STATES**

v.

**Burton BARR, Jr., 330 42 4913, Sergeant (E–5), U. S. Marine Corps.**

**NCM 76 0647.**

U. S. Navy Court of Military Review.

Sentence Adjudged 23 Oct. 1975.

Decided 27 Aug. 1976.

LT H. Glenn Scammel, JAGC, USNR, Appellate Defense Counsel. LT Michael C. Farrow, JAGC, USNR, Appellate Government Counsel.

Before EVANS, Senior Judge, MALLERY and GREGORY, JJ.

EVANS, Senior Judge:

Appellant, contrary to his pleas, stands convicted of one minor unauthorized absence offense and wrongful possession of cocaine in violation of Articles 86 and 92, Uniform Code of Military Justice. Court members, after considering two previous court-martial convictions, sentenced appellant to a bad conduct discharge and accessory penalties.

Appellate defense counsel has filed eleven assignments of error. By assigned error II he charges the Government did not present sufficient evidence establishing the chain of possession of the cocaine from the date of seizure to date of chemical analysis.

We agree with the views of appellate defense counsel. Government counsel urges the chain of possession error was waived because no objection was made to the testimony of the chemist until completion of cross-examination. Government counsel takes the position an objection should have been raised upon conclusion of the trial counsel's direct examination of the chemist. It may be the objection was untimely, but it was made during the prosecution's case-in-chief. This is not a case where an evidentiary issue was left unresolved at the trial level to gain a tactical advantage at trial or before us, *United States v. Heflin*, 23 U.S.C.M.A. 505, 507, 50 C.M.R. 644, 646, 1 M.J. 131 (1975). The Government's legal champion cites at page 6 of his brief (footnote 3) judicial holdings where an evidentiary issue was waived by a

failure to object. We do not consider those cases apply here. However, Government counsel in his pursuit of justice also refers us to a Comment in a recent issue of the Military Law Review which is helpful in disposing of the raised error, Imwinkelreid, *The Identification of Original, Real Evidence*, 61 Military Law Review 145 (Summer 1973). After reviewing the Comment, we are persuaded to find for the appellant. The ethical candor of Government counsel has not gone unnoticed, *United States v. Catt*, 23 U.S.C.M.A. 422, 425, 50 C.M.R. 326, 329, at footnote 3, 1 M.J. 41 (1975).

We now turn to the record evidence. On 19 March 1975 Sergeant M. Walker was conducting a random administrative vehicle search at the Las Pulgas Gate on board Camp Pendleton. After appellant's vehicle was stopped, the Sergeant's dog alerted when he "searched" the vehicle. Sergeant Walker placed appellant and his passengers under apprehension. A search of the vehicle trunk uncovered white powder wrapped in four small tinfoil packages in appellant's field jacket. The Sergeant initialed the four tinfoil wrappers and sent a report of the incident to the Base Criminal Investigation Office. First, it should be noted there was no firm testimony the contraband was sent along with the incident report. We resolve this omission in favor of the Government only to distill the issue (R. 61).

 Army Sergeant J. W. Williamson testified he is on duty at the criminal laboratory at Fort Gordon as a forensic chemist. He examined the white powder in the four tinfoil packages and determined the powder contained cocaine. After completion of the Sergeant's testimony, civilian defense counsel moved to strike the testimony because of the chain of possession problem and the fact the chemist had inadvertently spilled some of the contraband. The judge correctly ruled that the appellant was not prejudiced because a sample was not available for defense testing or inspection, *United States v. Sewar*, 468 F.2d 236 (9th Cir. 1972) and *United States v. Augenblick*, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969).

However, the absence of contraband is important when considering the chain of possession issue. The record *does not show* the date the chemical test was performed at Fort Gordon. Trial was not held until October. The Government counsel concludes the analysis was probably completed in August when the offense was referred to trial. Assuming the delay was only five months does not lessen the requirement of establishing a chain of possession.

 The trial judge did not require the Government to show the seized white powder was segregated from other fungible evidence and subject to security safeguard prior to its being mailed to Fort Gordon. We take the position such is required unless there is an express concession or waiver by the defense, *see generally United States v. Evans*, 21 U.S.C.M.A. 579, 45 C.M.R. 353 (1972). The thrust of a not guilty plea is to put the Government to its proof. This requires the trial counsel to present admissible evidence. Here, testimony of the chemist was inadmissible since there was no showing the white powder analyzed was the same as that seized, *contra United States v. Bradley*, 50 C.M.R. 608, 621 (N.C.M.R.1975).

Examples of judicially blessed chains of possession are set forth below. The first model is taken from *United States v. Sears*, 248 F.2d 377, 378 (7th Cir. 1957)[1]:

"Agent Hazer took the envelope with its contents, dated it, initialled it, locked it in his drawer at the Bureau of Narcotics, where it remained until three days later, November 18, 1952, when he placed it in another envelope and submitted it to the chemist, who broke the seal on the envelope, removed the contents, weighed and analyzed it, and found the substance to be heroin. The chemist then resealed the exhibit in the envelope. Though he did not carry it with him, he testified that the envelope could not have been opened without breaking the seal, and that, when it was taken to court by Agent Christopher, it was still sealed. The latter testified that from the time the chemist gave

---

1. Reversed on other grounds, 355 U.S. 602, 78 S.Ct. 534, 2 L.Ed.2d 525 (1957).

him the exhibit, it remained in his possession, until September 21, 1955. At that time, the trial having been postponed, he returned it to the chemist who, on the same day, resealed it in another envelope, which was returned sealed to the court on December 19, 1956, and *opened in court during the trial,* when *the narcotics were removed therefrom.* The evidence is clear that the envelope was traced from the time it was received by the officers and preserved intact until the trial." [Emphasis supplied.]

Judge Chadwick in the *Bradley* opinion, *supra,* describes with approval another chain of custody:

"Chief Master-at-Arms McCurry recovered the tablets which the defendant had wrongfully distributed to three fellow sailors. McCurry placed the tablets recovered from each man into a separate unaddressed white government envelope. McCurry sealed each of the three envelopes and wrote his name and the time thereon. He retained the three sealed envelopes in his safe aboard the ship until he personally delivered the tablets for chemical analysis to the chemist at the laboratory of the Commonwealth of Virginia Bureau of Forensic Sciences. The subsequent chemical analysis of the tablets established that they were LSD. Thereafter, *McCurry personally picked up the laboratory reports and the remaining tablets that had not been consumed during the testing.* We find no spectre of tampering or substitution in the fact that each of the tablets in question had an added black dot thereon when they were returned from the laboratory analysis." [Emphasis supplied.]

A defective chain of custody is briefly described by Chief Judge Rosenwasser in *United States v. Pahl,* 50 C.M.R. 885, 886 (C.G.C.M.R.1975):

"We find merit however, in appellant's contention that the judge erred in admitting into evidence Prosecution Exhibit 5, a ceramic jar containing marihuana, purportedly the marihuana the accused allegedly had in his possession on 14 July 1974.

"We find error not on the ground that Exhibit 5 was the product of an illegal search and seizure, but on the ground that the *prosecution did not cover by competent evidence the links in the chain of custody of Exhibit 5 between its seizure on 15 July and the day in November* when it was offered in evidence at the trial. In other words, the government's proof failed to show that the vegetative matter, which a crime laboratory had identified as marihuana and which was received in evidence, was the same substance which was in the jar when it was seized upon the search. The government neglected to establish a complete chain of custody of the substance. Accordingly, Prosecution Exhibit 5 was not entitled to admission in evidence." [Emphasis supplied.]

Since a drug specimen is easily susceptible to tampering, it was incumbent on the judge to elicit evidence to the contrary before admitting the testimony of the chemist, particularly where there was none of the seized substance available at trial for comparison.

■ The foregoing should not be construed as holding that every "link" in the chain is required to testify at trial. We only hold that where the contraband is not present at trial for identification the Government should sua sponte present the testimony of sufficient links to establish the probability the evidence was safeguarded. This chain should cover the period between the dates of seizure and chemical analysis, 61 Military Law Review, *Id.* pages 155, 156 and *United States v. Hughes,* 16 C.M.R. 559, 562, 563 (A.F.B.R.1954), *pet. denied* 4 U.S.C. M.A. 740, 16 C.M.R. 292 (1954), *rev'd. on other grounds* 5 U.S.C.M.A. 374, 17 C.M.R. 374 (1954).

■ Accordingly, the findings of Charge I and its specification are affirmed. The findings of Charge II and accompanying specification are set aside. Charge II and its specification are dismissed. Only so much of the sentence as approved below as provides for three months confinement, for-

feiture of $100.00 per month for three months, and reduction to pay grade E–1 is affirmed.

Judge MALLERY and Judge GREGORY concur.