*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

### UNITED STATES
Appellant

**v.**

### Paul E. COOPER, Yeoman Second Class
United States Navy, Appellee

**No. 18-0282**
Crim. App. No. 201500039

Argued December 4, 2018—Decided February 12, 2019

Military Judges: Robert Blazewick (trial) and
Marcus N. Fulton (*DuBay* hearing)

For Appellant: *Major Kelli A. O'Neil*, USMC (argued);
*Colonel Valerie C. Danyluk*, USMC, *Colonel Mark K. Jamison,* USMC, *Captain Brian L. Farrell,* USMC, and
*Brian K. Keller,* Esq. (on brief).

For Appellee: *Major Maryann McGuire*, USMC (argued);
*Captain Andrew House,* JAGC, USN.

Chief Judge STUCKY delivered the opinion of the Court, in which Judges RYAN, OHLSON, and MAGGS, joined. Judge SPARKS filed a separate dissenting opinion.

———————

Chief Judge STUCKY delivered the opinion of the Court.

The United States Navy-Marine Corps Court of Criminal Appeals (CCA) held that Appellee had been deprived of his right to individual military counsel (IMC) and set aside the findings and sentence. The Judge Advocate General of the Navy certified four issues to this Court: (1) Did Appellee waive the right to IMC?; (2) Should the failure of the detailed defense counsel to submit a request for IMC be reviewed under the *Strickland v. Washington*[1] standard for ineffective assistance of counsel (IAC)?; (3) If *Strickland* does not apply, was Appellee deprived of his statutory right to IMC?; and (4) Was Appellee prejudiced? We hold that

———————

[1] 466 U.S. 668 (1984).

Appellee knowingly and intelligently waived his right to IMC. In light of our waiver determination, the remaining certified issues are moot. We return the case to the Judge Advocate General of the Navy for remand to the CCA for further review.

## I. Background

Appellee, a Navy reservist, was deployed to Joint Task Force Guantanamo Bay, Cuba (JTF), as a Freedom of Information Act (FOIA) clerk, during which time he had contact with several judge advocates. In October 2013, after agents of the Naval Criminal Investigative Service (NCIS) interviewed him concerning allegations that he had sexually assaulted another sailor, Appellee went to the Region Legal Services Office (RSLO) to seek defense services. A servicemember at that office told Appellee that he was not eligible for such services until charges were preferred.

Appellee had an attorney-client relationship with Captain (CPT) Thomas Neumann with regard to two legal assistance matters. CPT Neumann, a California Army National Guard judge advocate, was assigned to the JTF staff judge advocate's (SJA's) office from mid-November 2013 to mid-August 2014. He was Appellee's supervisor in the FOIA shop from November 2013 to February 2014 and served as the chief of legal assistance. Although legal assistance attorneys were barred by the SJA, and by Army regulation,[2] from providing advice on military justice matters, CPT Neumann spoke to Appellee about the criminal allegations because Appellee was not getting help through the RLSO. Appellee, however, did not think that CPT Neumann was going to represent him for his court-martial.

In April 2014, Appellee was charged. Lieutenant (LT) Jennifer Buyske, U.S. Navy, who was stationed at Naval Station Mayport, Florida, was detailed as his defense counsel. She advised Appellee of his rights to counsel but he declined IMC before the Article 32 investigation.[3] LT Buyske

---

[2] Dep't of the Army, Reg. 27-3, Legal Services, The Army Legal Assistance Program ¶ 3-8.a.(1) (Feb. 21, 1996).

[3] Article 32, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 832 (2012).

was Appellee's sole counsel at the Article 32 hearing. Charges were referred to trial on June 13, 2014.

Appellee was arraigned on August 20, 2014. After LT Buyske announced her credentials, the military judge asked if any other defense counsel had been detailed to the case or if IMC had been requested. LT Buyske answered, "No, sir." The military judge then advised Appellee of his rights to counsel, including his right to IMC and that military counsel would be provided free of charge. The colloquy continued:

> MJ:  Do you understand?
>
> ACC:  Yes, sir, I do.
>
> ….
>
> MJ:  Do you have any questions about your rights to counsel?
>
> ACC:  No, sir, I do not.
>
> MJ:  And by whom do you wish to be represented?
>
> ACC:  Lieutenant Buyske, sir.
>
> MJ:  Do you wish to be represented by any other counsel, either civilian or military?
>
> ACC:  No, sir, I do not.

Appellee then entered his pleas of not guilty.

At the start of the trial, after a continuance of about a month, the military judge noted the presence of Lieutenant Commander (LCDR) Nathaniel Gross, U.S. Navy, who had not been present at arraignment. After LCDR Gross entered his appearance as the assistant defense counsel, the military judge asked if any other counsel had been requested. LCDR Gross answered: "No, Your Honor." Neither Appellee nor LT Buyske contradicted this statement.[4]

Thereafter, a general court-martial composed of officer and enlisted members convicted Appellee, contrary to his pleas, of three specifications of sexual assault and one speci-

---

[4] In an affidavit for the CCA, LCDR Gross declared that when he detailed himself to the case, he advised Appellee of his rights to counsel, including his right to be represented by IMC. Appellee never mentioned his desire to seek IMC and told LCDR Gross that he was confident in the ability of LCDR Gross and LT Buyske to defend him.

fication of abusive sexual contact. Article 120, UCMJ, 10 U.S.C. § 920 (2012). While the court members deliberated on the sentence, Appellee voluntarily absented himself. The court members sentenced him in absentia to a dishonorable discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to pay grade E-1.

After Appellee returned to military control, The convening authority approved the adjudged sentence. Due to an error in the action of the convening authority, the CCA remanded for a new action. *United States v. Cooper*, No. NMCCA 201500039 (N-M. Ct. Crim. App. Mar. 19, 2015) (order). The convening authority again approved the adjudged sentence.

On appeal before the CCA, Appellee raised ten issues, including that, (1) he was deprived of his Sixth Amendment right to counsel of choice and his statutory right to IMC when trial defense counsel failed to submit his IMC requests, and (2) by failing to submit his requests for IMC to the convening authority, his trial defense counsel provided him ineffective assistance. After ordering and reviewing conflicting affidavits, the CCA remanded the case for a *DuBay* hearing[5] to answer two questions: (1) whether Appellee asked his detailed defense counsel to request CPT Neumann as IMC; and (2) whether CPT Neumann was "reasonably available" to so serve under applicable law and regulations. *United States v. Cooper*, No. NMCCA 201500039 (N-M. Ct. Crim. App. Apr. 6, 2016) (order).

During the *DuBay* hearing, Appellee testified that he told LT Buyske he wanted CPT Neumann as his defense counsel but LT Buyske told him that CPT Neumann would not be available in time for the trial. Appellee further testified that he asked if she could get a continuance but she told him CPT Neumann could not be his attorney because he would not be there in time.

LT Buyske testified that Appellee had requested two IMCs: first Commander (CDR) Massucco and then Marine Captain (Capt) Neely. She contacted CDR Massucco but de-

---

[5] *See United States v. DuBay*, 17 C.M.A. 147, 149, 37 C.M.R. 411, 413 (1967).

termined he was not reasonably available because he was a reservist who was no longer on active duty.[6] When she informed Appellee that CDR Massucco was not available, Appellee requested Capt Neely as his IMC. LT Buyske contacted Capt Neely but determined he was not reasonably available because he was serving as a trial counsel.[7]

LT Buyske testified that Appellee never requested CPT Neumann as IMC. She admitted contacting CPT Neumann as a character witness but stated that CPT Neumann never told her he had an attorney-client relationship with Appellee or that Appellee had requested him as IMC.

CPT Neumann testified that when LT Buyske contacted him, he told her he had an attorney-client relationship with Appellee and that he wanted to be Appellee's IMC.

The *DuBay* judge found that both Appellee and LT Buyske "appeared credible," and Appellee:

> did make the [IMC] request [for CPT Neumann] because there is sufficient circumstantial evidence supporting the Appellee's version to convince me of the fact by a preponderance of the evidence. I specifically do not find that LT Buyske intentionally sought to mislead the Court in her testimony; rather, for the limited purposes of this hearing, I find that the Appellee has met his relatively modest burden of proof.

The *DuBay* judge further found that CPT Neumann was reasonably available to serve as IMC.

The CCA concluded that: (1) the *DuBay* judge's findings of fact were not clearly erroneous, *United States v. Cooper*, No. NMCCA 201500039, 2018 CCA LEXIS 114, at *24, *27, *30, *34, 2018 WL 1178847, at *8, *10, *12 (N-M. Ct. Crim. App. Mar. 7, 2018); (2) Cooper's understanding that CPT Neumann was unavailable was erroneous, *id.* at *34, 2018

---

[6] Dep't of the Navy, Judge Advocate General Instr. 5800.7F, Manual of the Judge Advocate General ¶ 0131b(4) (June 26, 2012) ("All counsel serving on active duty in the Navy or Marine Corps … may be determined to be 'reasonably available' by the commander of the requested counsel.").

[7] Rule for Courts-Martial (R.C.M.) 506(b)(1)(C) (trial counsel are not reasonably available to serve as IMC).

WL 1178847, at *12; (3) LT Buyske's failure to submit a request for CPT Neumann was not excused by the possibility he might have been found unavailable, *id.*, 2018 WL 1178847, at *12; (4) Cooper did not knowingly and intelligently waive his right to IMC, *id.*, 2018 WL 1178847, at *12; (5) Cooper was deprived of his statutory right to IMC, *id.* at *37, 2018 WL 1178847, at *13; and (6) Cooper suffered material prejudice by the failure of LT Buyske to submit his IMC request for CPT Neumann. *Id.* at *45, 2018 WL 1178847, at *15.

The CCA also concluded that its holdings rendered several of the remaining issues, including the ineffective assistance of counsel claim, moot. *Id.* at *3 n.3, 2018 WL 1178847, at *1 n.3. It set aside the findings and sentence and authorized a rehearing. *Id.* at *53, 2018 WL 1178847, at *19. The CCA denied the Government's motion for reconsideration, and in the alternative, en banc reconsideration. *United States v. Cooper*, No. NMCCA 201500039 (N-M. Ct. Crim. App. Apr. 17, 2018) (order). The Judge Advocate General of the Navy certified the four issues noted above to this Court.

## II. Discussion

"Waiver can occur either by operation of law, or by the intentional relinquishment or abandonment of a known right." *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018) (internal quotation marks omitted) (citations omitted). The Government argues that Appellee waived the IMC issue under two theories: (1) his failure to raise the issue before entering pleas constituted waiver under R.C.M. 905; and (2) he affirmatively waived the issue in his response to the military judge's IMC inquiry. Because we hold that Appellee affirmatively waived his right to IMC, we need not resolve the applicability of the Government's first theory.

The CCA rejected the Government's waiver argument with regard to the military judge's IMC inquiry. *Cooper*, 2108 CCA LEXIS 114, at *35–37, 2018 WL 1178847, at *12–13. Consistent with the CCA's opinion, Appellee argues that a waiver must be knowing and intelligent, and Appellee's answers to the military judge's inquiry about IMC were not

knowing and intelligent, as LT Buyske provided him erroneous advice regarding the issue.

> [W]aiver is the intentional relinquishment or abandonment of a known right. Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake.

*United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks omitted) (citations omitted); *see United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009); *United States v. Harcrow*, 66 M.J. 154, 156 (C.A.A.F. 2008).

> And the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed consequences* of invoking it. A defendant, for example, may waive his right to remain silent, his right to a jury trial, or his right to counsel even if the defendant does not know the specific questions the authorities intend to ask, who will likely serve on the jury, or the particular lawyer the State might otherwise provide.

*United States v. Ruiz*, 536 U.S. 622, 629–30 (2002); *see Iowa v. Tovar*, 541 U.S. 77, 86 (2004).

Citing our opinion in *United States v. Mott*, 72 M.J. 319 (C.A.A.F. 2013), the CCA found Appellee had not validly waived his right to request IMC because his statements to the military judge were not knowing and intelligent. *Cooper*, 2018 CCA LEXIS 114, at *35–36, 2018 WL 1178847, at *12. In *Mott*, the military judge denied the appellant's motion to suppress statements made to law enforcement officials. 72 M.J. at 323, 329. This Court held that the military judge abused his discretion by focusing on the voluntariness of the accused's out-of-court statement without considering whether the waiver was knowingly and intelligently made in light of the considerable evidence that the accused had been laboring under a mental disease or defect. *Id.* at 331—32. There is no evidence, however, that Appellee was unable to

understand the military judge's advice as to his rights to counsel.

In further support of his position, Appellee cites *Fairchild v. Lehman*, 814 F.2d 1555 (Fed. Cir. 1987). There, the petitioner asserted that he had accepted nonjudicial punishment (NJP) for use of marijuana only after his counsel had assured him that if he did so he would not receive an adverse characterization of discharge. *Id.* at 1558. He received an other than honorable conditions discharge. He appealed to the Board for Correction of Naval Records (BCNR). *Id.* at 1557. In an unsworn letter, his counsel, a reservist, could not remember specifically counseling the petitioner but opined as to what he thought he would have said. *Id.* at 1558. The BCNR sided with the government. The district court concluded that the BCNR finding (apparently that his counsel did not advise the petitioner he would not get an adverse discharge if he accepted NJP) was unsupported by the evidence. *Id.* at 1557. The circuit court agreed. It did "not think that an accused can execute an intelligent waiver of his statutory right to trial when he has been misinformed of the consequences of electing nonjudicial punishment by counsel provided by the military." *Id.* at 1560.

But Appellee's case is different. In *Fairchild*, there was no buffer between the allegedly incorrect legal advice the appellant received from his counsel and his decision to accept NJP. In this case there was. The military judge carefully explained to Appellee at arraignment the nature of the right to IMC. Appellee told the military judge that he understood his rights and wanted to be represented by LT Buyske and only her. The military judge further asked if an IMC was ever requested. Appellee sat mute when she told the military judge that no such request had been made. When LCDR Gross entered his appearance, the military judge again inquired as to whether other counsel had been requested. And when LCDR Gross told the military judge that no request for IMC had been made, Appellee again remained mute.

The purpose of the IMC colloquy is to ensure the accused receives an explanation of the full panoply of his rights to counsel unfiltered by the detailed defense counsel and for the military judge and appellate authorities to satisfy

themselves that the accused was represented by the counsel of his choice. The military judge's colloquy with Appellee concerning his right to IMC was unequivocal. The military judge spoke directly to Appellee and received direct answers back without the filter of the defense counsel.[8] If Appellee had wanted other counsel he should have said so. Instead, he declined other counsel and told the military judge that he wished to be represented by LT Buyske and no other counsel. And he sat mute when the military judge questioned LCDR Gross concerning whether other counsel had been requested.

Appellee fully understood the nature of the right to IMC and how it would have applied to him. *See Ruiz*, 536 U.S. at 629–30. We conclude that he knowingly and intelligently waived his right to IMC.

That leaves unanswered other issues the CCA determined were mooted by its decision that Appellee was denied his statutory right to IMC. *See Cooper*, 2018 CCA LEXIS 114, at *3 n.3, 2018 WL 1178847, at *1 n.3. We leave those issues for the CCA to resolve on remand.

### III. Judgment

The judgment of the United States Navy-Marine Corps Court of Criminal Appeals is reversed. The case is returned to the Judge Advocate General of the Navy for remand to the CCA for further review under Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2012).

---

[8] The dissent's cite to *United States v. Catt*, 1 M.J. 41, 47 (C.M.A. 1975), is unavailing. There, the Court held that, despite the appellant's failure to object to the military judge's ruling disqualifying his detailed defense counsel, he did not waive the right to appeal that ruling. In this case, there was no "silent acceptance of a condition [Appellee] apparently was powerless to change." *Id.* Appellee had the power to change the condition by telling the military judge that he wanted CPT Neumann as his IMC.

Judge SPARKS, dissenting.

The majority holds that Appellee's acknowledgment of his right to individual military counsel (IMC), expression of his desire that LT Buyske represent him, and failure to contradict LT Buyske or LCDR Gross's statements that no other counsel had been requested, renders an express waiver. However, I respectfully submit that the record reveals no indication that Appellee knowingly, voluntarily, and intelligently waived his IMC claim.

Whether an accused has waived an issue is a question of law we review de novo. *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017). "Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *Id.* (internal quotation marks omitted) (quoting *United States v. Girouard*, 70 M.J. 5, 10 (C.A.A.F. 2011)).

This Court described the right to IMC as a fundamental right. *United States v. Hartfield*, 17 C.M.A. 269, 270, 38 C.M.R. 67, 68 (1967). Generally, waivers of fundamental rights must be "knowing, intelligent, and voluntary." *Ricketts v. Adamson*, 483 U.S. 1, 23 (1987). "The Supreme Court has admonished … that courts should not lightly indulge the waiver of a right so fundamental as the right to counsel." *United States v. Catt*, 1 M.J. 41, 47 (C.M.A. 1975) (citing *Glasser v. United States*, 315 U.S. 60 (1942)). "The appellant's silent acceptance of a condition he apparently was powerless to change can hardly be called an exercise of free will." *Id.* (internal quotation marks omitted) (quoting *United States v. Andrews*, 21 C.M.A. 165, 168, 44 C.M.R. 219, 222 (1972)).

The first question posed to the *DuBay* judge was, "[d]id the appellant ask his trial defense counsel to request [CPT Neumann], California Army National Guard, as an [IMC]?" The *DuBay* judge answered in the affirmative. Specifically:

> The appellant testified that he told LT Buyske that he wanted CPT Neumann to be his IMC, and LT Buyske testified that he had not. Both witnesses appeared credible on the stand. [The *DuBay* judge] conclude[d] that the appellant did make the request because there is sufficient circumstantial evidence supporting the appellant's version to convince [the

*DuBay* judge] of the fact by a preponderance of the evidence.

This circumstantial evidence included:

> At some point, the appellant clearly came to believe that he could not have CPT Neumann as an IMC, and he made yet another request for an attorney that he had worked with in Guantanamo Bay, Capt [JN], USMC ... Capt [JN] understood that the appellant was asking him because the appellant's requests for [CDR GM] and [CPT] Neumann had been denied. [The *DuBay* judge] find[s] that [Capt JN] and the appellant exchanged the Facebook messages contained in Appellate Exhibit XXX–A, which convince [the *DuBay* judge] that the appellant was keen to get an IMC involved in the case, and that he was requesting attorneys he had worked with in Guantanamo Bay. These Facebook messages, which [the *DuBay* judge] considered as prior consistent statements of the appellant, tend to show that the appellant was under the impression that he could not have CPT Neumann as his IMC because [CPT] Neumann was still in Guantanamo Bay.

At the *DuBay* hearing, when Appellee was asked why he named LT Buyske and not another attorney as his choice to represent him, Appellee testified:

> I had no reason to, like, they had all been denied, you know. That was the last person I had, and after they asked who I wanted to be represented by. I didn't know to bring up other—other IMCs that had been denied, so at that time, like, I wanted [LT] Buyske to represent me because my other requests had been denied.

LT Buyske's advice to Appellee left him with the false impression that his request for CPT Neumann as his IMC had been denied. Based only on this erroneous advice did Appellee inform the military judge that he wanted to be represented by LT Buyske. After reviewing the *DuBay* judge's factual findings, I do not conclude that Appellee had the minimal level of understanding regarding his right to an

IMC necessary to knowingly, voluntarily, and intelligently waive this fundamental right.[1]

Furthermore, the majority's position that Appellee should have interrupted his defense counsel when defense counsel was asked whether any "individual military counsel [had] been requested in this case" is beyond what the military justice system should expect from an accused. In the majority's view, an accused in this kind of situation can only avoid waiver if he stands up and directly attacks the actions of his attorney in open court. I cannot imagine many accused servicemembers doing so. The reality is that attaching significance to the accused's silence in a situation like this substitutes the accused's personal autonomy to request IMC with a rationale that allows the Court to act as if the defendant affirmatively made the decision. Thus, under the facts of this case, I cannot find an adequate basis in the record to conclude that Appellee knowingly, voluntarily, and intentionally waived his fundamental right to request IMC. For this reason, I respectfully dissent.

---

[1] There may be differing views as to whether the right to an IMC is a fundamental right. *Hartfield*, 17 C.M.A. at 270, 38 C.M.A. at 68. However, until our case law is disturbed, it remains so. *See United States v. Dinger*, 77 M.J. 447, 452 (C.A.A.F. 2018) ("Stare decisis is a principle of decision-making, under which a court follows earlier judicial decisions when the same issue arises in other cases." (citing *Payne v. Tennessee*, 501 U.S. 808, 828 (1991))).