UNITED STATES, Appellee

v.

DAVID J. BORNER, Sergeant, NATHANIEL HOWARD, Sergeant, and CLIFFORD E. WARE, Private E-2, U. S. Army, Appellants

3 USCMA 313, 12 CMR 69

314

Nos. 1284, 1394 and 1468

Decided September 11, 1953

 

George R. Thurston, Esq., LT COL James C. Hamilton, U. S. Army, LT COL George M. Thorpe, U. S. Army, and 1ST LT Michael E. McGarvey, U. S. Army, for Appellants.

LT COL William R. Ward, U. S. Army, LT COL Thayer Chapman, U. S. Army, and 1ST LT Joseph C. Chandler, U. S. Army, for Appellee.

### Opinion of the Court

ROBERT E. QUINN, Chief Judge:

While their appeals were pending before this Court, the accused filed petitions for new trial up- ██ on the basis of newly discovered evidence and fraud upon the court. In support of these petitions, affidavits were submitted by defense counsel and assistant defense counsel who represented the accused at the trial. These affidavits allege that prior to the convening of the court in this instance, prospective court members were assembled by the commanding general, Second Division, the convening authority, who discussed with them the state of discipline in the command, the prevalence of certain offenses, and the command measures to prevent offenses. No contention that any of these remarks violated the provisions of paragraph 38 of the Manual for Courts-Martial, United States, 1951, is made. It is contended, however, that the Division Staff Judge Advocate, in his discussion of court-martial procedures immediately following the address of the convening authority, far exceeded the permissive provisions of paragraph 38, *supra*, by stating that his office reviewed each case carefully before sending it to trial

"so that only the real good cases will come before you as members of the court." In reply to this allegation, Government counsel have submitted affidavits of the law officer and several members of the court. No corroboration of the defense contention is found in any of these affidavits nor is any corroboration furnished by the defense. It is particularly significant to note that the defense counsel indicates he was aware of this alleged undue influence at the time of the trial. Under these circumstances, he clearly violated his duty as a defense counsel when he failed to present the matter to the court-martial. One so lacking in appreciation of the duties assigned to him as an officer of the Army and of the court is wholly unworthy of belief and we reject the contention.

It is next alleged that the action of the Staff Judge Advocate in transferring, causing to be trans- ██ ferred, or failing to prevent the transfer of one Sergeant Cue, a witness who would testify favorably to the defense constituted suppression of exculpatory evidence and a fraud upon the court. It appears that Sergeant Cue, during the course of the pretrial investigation,

**315**

stated that he had visited the scene of the offenses as a military policeman shortly after the occurrence of the crimes and noticed no evidence of physical injury to the victim of the rape. In view of the clear and unrebutted testimony of witnesses respecting the victim's physical appearance, this statement would have little if any probative effect upon a court-martial. Furthermore, it clearly appears from the affidavits submitted that, at the time of the departure of this witness from Korea, the Staff Judge Advocate was unaware of his testimony. However, the trial counsel noted the discrepancy between his statement and those of all the other witnesses and attempted to examine him well in advance of trial, but discovered that he had been rotated. He then discussed the matter with the regularly appointed defense counsel and stated that should the presence of this witness be desired an attempt would be made to return him from Japan or to secure his deposition. No request for either action was made by the defense counsel either prior to the trial or during the course thereof. Under these circumstances the absence of this witness was neither attributable to the Staff Judge Advocate nor did it constitute a fraud upon the court.

Finally, the assistant defense counsel has deposed that, shortly after the apprehension of the accused, ■ he was summoned to the office of the Division Judge Advocate who explained the substance of the case to him, gave him copies of the statements made by the accused, and told him of the necessity for speedy disposition of the case. The charges were then drafted with the assistance of the Division Judge Advocate and sworn to by the accuser before the assistant defense counsel as assistant adjutant. Thereafter, he alleges, he was ordered to investigate the case. When this order was rescinded and another investigator appointed, he was instructed to assist his replacement. The assistance afforded to the appointed investigating officer is neither asserted nor intimated.

The affidavits filed in reply to this contention clearly establish that the assistant defense counsel was the Courts and Boards Officer of his regiment, and, as such, normally performed ministerial functions in the processing of court-martial charges. None of these functions constituted him an investigating officer within the proscription of Article 27 (a) of the Uniform Code of Military Justice, 50 USC § 591. It further clearly appears that the assistant defense counsel served as counsel for the accused during the pretrial investigation. His participation therein as an investigating officer was, therefore, impossible. The lack of corroboration of this defense allegation coupled with the circumstance that he wrongfully concealed this disqualification both from his clients, if it existed in fact, and the court, destroys his credibility.

Appellate defense counsel have submitted photographic copies of a letter addressed to them by Sergeant Borner. In this letter it is alleged that the murder victim was killed by Ware while both of them were struggling after leaving the Korean home. This allegation is also contained in an affidavit forwarded to this Court by Borner. As indicated in the foregoing opinion, under the circumstances of this case, it is immaterial who actually killed Lee Chin Yong. Moreover, even if the statement contained in the letter could be considered a defense to the charge, it is a matter which should have been presented at the court-martial by the accused. Having chosen to remain silent his present attempt to describe the circumstances of one of the offenses is of no avail.

Accordingly, the petitions for new trial are denied.

Judges LATIMER and BROSMAN concur.