## UNITED STATES

v.

**George D. PAPAGEORGIOU, 261 49 9481, Private (E–1), U. S. Marine Corps.**

**NMCM 81 0961.**

U. S. Navy-Marine Corps Court of Military Review.

26 March 1982.

CDR Matthew J. Wheeler, JAGC, USNR, Appellate Defense Counsel.

LCDR Michael R. McGuire, JAGC, USN, Appellate Government Counsel.

Before BAUM, KERCHEVAL and MICHAEL, JJ.

MICHAEL, Judge:

Between 16 June and 1 August 1980, appellant, a Marine Corps private, was tried at general court-martial before members. Pursuant to his plea of guilty, he was convicted of unlawfully selling government property, a violation of Article 108, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 908. Appellant pled guilty to wrongful appropriation of private property but was found guilty of the greater offense of larceny, a violation of Article 121, UCMJ, 10 U.S.C. § 921. Contrary to his pleas, he was convicted under three further specifications of larceny—of a government movie projector, of 24 blank Armed Forces identification cards, and of one government field safe with more than 230 negotiable government checks therein—all in violation of Article 121, UCMJ. Appellant was further convicted—again, contrary to his pleas—of unlawful entry into a government office with intent to commit larceny, a violation of Article 130, UCMJ, 10 U.S.C. § 930. Ap-

pellant was sentenced to confinement for seven years, forfeiture of all pay and allowances, and a dishonorable discharge. The sentence was approved by the convening authority.

Appellant now petitions this Court for a new trial on two specifications under Charge II.[1] The two specifications alleged, respectively, larceny of the 24 blank identification cards and larceny of the safe and checks contained therein.

Appellant argues that a new trial is warranted on the basis of newly discovered evidence and fraud on the court. *See generally* Article 73, UCMJ, 10 U.S.C. § 873, paragraph 109, *Manual for Courts-Martial, 1969 (Rev.)* (MCM). The newly discovered evidence which appellant claims exists would arguably appear, in one instance, in immunized future testimony by the Government's key witness at trial, Private Olsen. Appellant argues that Private Olsen "is now willing to testify that petitioner did not steal the checks or identification cards; that [Private Olsen] was the sole perpetrator; and that [Private Olsen] perjured himself at [appellant's] court-martial."

Appellant bases this argument on an affidavit from Private Olsen. Interestingly, Private Olsen does not recant his earlier testimony at appellant's trial. He merely says: "I have evidence relevant to the guilt or innocence of Private (E–1) George D. Papageorgiou, USMC, 261–49–9781, regarding the theft of Government checks and I.D. cards at Camp Lejeune, North Carolina. However, I will not bring this evidence forth without a grant of immunity for future prosecution for the charge of perjury."

Private Olsen's affidavit is just as consistent with an adherence to his prior testimony implicating appellant as it is with a renunciation of that testimony. On the basis of the affidavit, we cannot say whether or not there may have been perjury at the prior trial and whether or not it may have related to appellant. Private Olsen's affidavit avoids the issue, and there is no assurance that he will ever clarify it—since he has no right to a grant of immunity from prosecution for perjury.[2]

Appellant also claims the existence of newly discovered evidence in affidavits from ten inmates of the confinement facilities where appellant was incarcerated with Private Olsen. These affidavits purportedly constitute evidence that Private Olsen informed the affiants—in some cases, after appellant's trial—that Private Olsen had perjured himself at the trial; that appellant had not been involved in the thefts of the identification cards, the safe and the checks; and that Private Olsen had wanted appellant to "burn" for exposing Private Olsen's involvement in the crime to the Naval Investigative Service.

We have examined the defense's many affidavits and the possibility of Private Olsen's recantation. We are not convinced that the impeachment of Private Olsen's testimony by the fellow inmates who have submitted affidavits or the possibility of Olsen's own recantation would lead to a substantially more favorable result for appellant at a new trial. We are, as is the defense, still faced with the fact that there was at trial unrebutted testimony of appellant's admission to commission of the two thefts at issue. Prosecutorial examination of Lance Corporal Vincent elicited the following statements:

1. Appellant's brief cited specifications 2 and 3 of Charge II. It is obvious from appellant's discussion, as the Government noted at page 2 of its reply brief, that the relevant specifications are numbers 3 and 4.

2. If a new trial were ordered, Private Olsen might be compelled to testify again without a grant of immunity and there is no reason to believe that his testimony would change under those circumstances. It is worthy of note that Private Olsen's testimony in the case *sub judice* was compelled under a grant of testimonial immunity. In any event, it would seem to be foolhardy to grant immunity from prosecution for perjury and thus open the floodgate to lying with impunity. As noted by one commentator, "the judicial attitude is that recantation should be 'looked on with the utmost suspicion.'" 2 *Wright, Federal Practice and Procedure 527.* If that is the general rule, we see no value in recantation under a grant of immunity from prosecution for perjury by one whose recanted testimony was originally immunized.

The accused [appellant] started talking about the safe that was ripped off at battalion, started bragging about himself and Olson [sic] had ripped off it in town.

\* \* \* \* \* \*

Well, he [appellant] told me that him and Private Olson [sic] got something and pried the window of the office, but it did not open. It buckled and shattered the glass. Private Olson [sic] reached around and unlocked the door, and then they went in; Private Olson [sic] got the safe up on his shoulder and ran around. And then they had a jeep that was sitting out in front that they had stolen prior, and they took it out and hid it.

\* \* \* \* \* \*

Record, at 206.

As to the theft of the military identification cards, the witness testified:

Yes, sir, he [appellant] was telling me that him and Private Olson [sic] had gone into the legal office down at battalion, and he'd been talking sitting there talking with Lance Corporal Austin, the WM that worked there, and she went out to the SRB section to get an SRB to type up a UPB or something like that. The safe drawers were open, say about four or five inches, and they would reach in there and grab I.D. cards and stick them in their camis.

Record, at 206.

Relative to petitioner's alleged involvement in the theft of the identification cards, another witness, Lance Corporal Johnson, testified as follows:

Q. Lance Corporal Johnson, did you ever have the occasion to see the accused in possession of any I.D. cards?

A. Yes, sir.

\* \* \* \* \* \*

Q. And, would you please describe for the court what these identification cards looked like?

A. One of them was filled out with PAPAGEORGIOU's picture on it, and there was two or three lying on the bed; two or three blank ones.

\* \* \* \* \* \*

Q. What, if anything, did you say to Private PAPAGEORGIOU concerning those I.D. cards?

A. I just asked him if he was going in the reserves and if he was getting out . . . And, I asked him what he was doing with them, and he said you can make money off I.D. cards, and picked them up and walked off.

Record, at 213.

■ At trial, defense counsel suggested that appellant could have been "kidding" about his involvement in the thefts; that he might have been aware of the details simply because Private Olsen had related them to him. (Record, at 211). Appellant himself has never come forward to lend substance to those suggestions. Silence at trial has been held to preclude the later attempt by an accused to present evidence in defense of the charge. *United States v. Borner*, 3 U.S.C.M.A. 313, 12 C.M.R. 69 (1953). Here, appellant's silence, both at trial and before this Court, precludes any implied rebuttal by him to the testimony below of Lance Corporals Vincent and Johnson. Based on that testimony and the corroborating evidence that the thefts actually occurred, we cannot agree with appellant that, even assuming *arguendo* the impeachment of Private Olsen's testimony by means of evidence along the lines contained in the affidavits which appellant now submits, a substantially more favorable result would be likely at another trial.

■ The burden of establishing that a new trial would probably produce a substantially more favorable result for the accused is borne solely by the appellant. *United States v. Thomas*, 3 U.S.C.M.A. 161, 11 C.M.R. 161 (1953); paragraph 109d(1), MCM. That burden is heavier than that which reposes in an appellant in the normal course of appellate review. *United States v. Walters*, 4 U.S.C.M.A. 617, 625, 16 C.M.R. 191, 199 (1954). We find that appellant has not carried that burden. Accordingly, after serious consideration of the merits of the petition and legal guidelines applicable thereto, the petition for new trial is denied.

Appellate defense counsel has not submitted for our consideration—within the enlargement of time granted by this Court on 7 July 1981—any assignments of error in addition to the petition for new trial and we, through our independent review of the record have found no errors materially prejudicial to the substantial rights of the appellant. Accordingly, the findings and sentence as approved on review below are affirmed.

Senior Judge BAUM and Judge KERCHEVAL concur.